Canada v. GCC Intl Ltd At the rate we're ready to proceed. Good morning, Your Honors, and may it please the Court. We're here today on an appeal from entry of a preliminary injunction. And the issue at the heart of this appeal is the District Court's erroneous construction of Claim 58 of the Canada Bill 187. This Court's review of that construction obviously is de novo. Now, before I delve into the details of Claim 58, I'd like to just take two minutes of my time to provide a brief factual background that I hope will put the claim construction issue into a proper context for the Court. As you know, the issue is whether Claim 58 covers a toner cartridge alone by itself or in combination with part of the printer, that is, the part of the so-called inventive coupling that resides in the printer. Now, this Court's adjudication of the issue of whether it's the cartridge or a combination of the cartridge and at least part of the printer will determine whether Canon can succeed in stopping companies like GCCI that make replacement parts for consumers of Canon printers to repair those printers, but whether Canon can stop companies like GCCI from competing in the marketplace. Now, GCCI only sells cartridges, so it doesn't sell printers. So if the claim covers any part of the printer, GCCI cannot directly infringe. In order to stop GCCI and companies like it from competing, Canon has to have a patent claim on the cartridge alone without the part of the inventive coupling that resides in the printer. And that's why we're here today. Now, just one more word of factual background about GCCI before I delve into Claim 58. GCCI makes toner cartridges that are compatible with printers sold by companies like Canon. But just to be absolutely clear, all of GCCI's cartridges are independently designed and engineered and manufactured. They're not copies. And in fact, if this cartridge that we're talking about today was a copy, we would not be talking about the L1A patent. As your honors are aware, Canon takes the position that the L1A patent, in fact, does not cover its own cartridge. And then there's a different patent that covers that. So this is not a case in which there was a copy. This is not a copying situation. The case isn't about that. The case is about whether Canon can succeed in stopping competition in this replacement market for replacement toner cartridges and whether it has done what it needs to do in that it's proven to stop that competition despite the default repair rule. And what it needs to have done is two things. Number one, it needs to have invented a cartridge that in and of itself is novel without the part of the coupling that resides in the printer. And number two, it needs to have patented that cartridge. Our position, as your honors are aware, is that Canon, one, did not invent such a cartridge standing alone. And two, certainly did not patent it. That leads me into the discussion of Claim 58. Claim 58 is a somewhat unusual claim, as your honors are aware. The lead authority that we said throughout our briefs was the body plan decision. And there, the court made a similar observation of the claim. It was, quote, a difficult one to make sense of. And the reason is because although the preamble begins with the words, a process cartridge, or in that case, it was an emergence cup, it then goes on to describe in excruciating detail structure and limitations, not of the cartridge, but of the main assembly of the printer. Yeah, well, that's the problem. In this case, it's not like BICOM in that respect. The hole is not defined in excruciating detail. It's not defined in a way that goes beyond the structure that relates to the problem. The hole is defined as being a hole defined by twisted surfaces. And the question under the BICOM analysis, which focuses on whether there are limitations in the claim that pertain to that other structure, what Cannon calls the environment, in this case, the main assembly of the printer, the BICOM analysis focuses on whether the claim defines limitations that would be meaningless with respect to the cartridge, the thing that Cannon says the claim should be excluded from. That's the BICOM analysis. And when you apply that to this claim, what you see is that there are multiple limitations in the claim that, in fact, would have no meaning if the claim covers only the cartridge. Which of the? There are several of them, Your Honor. Probably the most notable, because we brought it up in our opening brief and Cannon had no response, is that the claim says the projection on the cartridge, that's the male piece, and the twisted hole in the printer, that's the female piece, have to contact, quote, at least three points. But that's describing the coupling between the cartridge and the hole. That doesn't seem to be extraneous to the coupling. I agree with you, Your Honor. It's not extraneous to the coupling. It's extraneous to the projection. And the reason why is that for any projection that you can imagine, you're holding a cartridge in your hand with a projection of some sort, you can always devise, hypothesize, or in language of the lifetime court, imagine a hole, a twisted hole, that would contact it at three points. And for that reason, to say that the hole has to contact it at three points provides no limitation whatsoever on the cartridge. There is no cartridge and no projection that that limitation would ever exclude. We raised that point and there was no solution. They gave an example in their brief, one that had three, I'll call them prongs, three points. Suppose it had only two prongs. Would that be one that would only touch two points instead of three? No, Your Honor. You can always consider a hole that would undulate and would meet that projection at three, four, or five, any number of points that you desire. It's similar to the situation in the Bikram case, where they talked about a cuff that had to meet the taper of an abutment, and you could always hypothesize an abutment that would meet whatever the cuff looked like. The same thing is true here. I'm having a lot of trouble following your argument. As far as I can tell, Bikram has nothing to do with this case, neither does Stencil, neither does any other case, because it all depends on how the artisan would read the claim language at hand. You're going to be talking about the critical language of this claim, not very tortured attempts to analogize this case to Stencil or Bikram or any other case. The preamble says a processed cartridge, mountable, and it describes some of the parts in the assembly. And then the preamble ends by saying, said processed cartridge comprising. So as far as I can tell so far, it's a cartridge. It's not a printer. It's not a cartridge and part of a printer. It's just a cartridge. So, so far, I don't follow you at all. So then I guess you have to be saying, well, when they refer later in the body of the claim to the twisted surfaces, they must be claiming the twisted surfaces. Is that your point? That's correct, Your Honor. Well, I don't follow why that would be so, because it doesn't say a projection with a twisted surface. It says a projection for engagement with a twisted surface. When I read that, all that tells me is that's how it functions. That's its purpose. It doesn't tell me anything about its structure. This is a claim drawn entirely to structure. So I think that functional language in the claim doesn't constitute a claim limitation. And this looks for me like it's purely functional language. Purpose for engagement with. I don't think the twisted surface is part of the claim. It's not a limitation. May I respond, Your Honor? Well, I hope you will. Because, oh, I'm just not with you at all. I'm not getting anywhere down the road you want me to go down. Well, but I think a couple of points. Let me start here. The key question, Your Honor, the court in Beiheim and many other decisions, I'm not going to focus only on Beiheim, but it's made quite clear that one of the policies of claim construction is to give meaning to all the words in the claim. Now, if the claim is going to describe the way in which one thing operates with another, then the question is how do you give any meaning to those limitations? So, for example, I talked about the three points of contact. This claim also says that, and it uses the word when. It says when they're engaged. This is Column 29, Line 62. When the driving rotatable member rotates with the hole and the engaging portion of the projection engage together, there are a number of things that happen. One of the things that happens is that the twisted nature of the hole, it actually draws or urges the projection into the hole. Now, what does that language mean? The language is right there in the claim. It has to have some meaning. If you imagine in your mind for a moment that the claim covers only the cartridge and no part of the printer doesn't cover the twisted hole or anything else, how does the language that the projection has to be urged into the hole in any way limit the cartridge? It doesn't, Your Honor. What determines whether the projection is urged inwardly or outwardly is the direction in which you rotate the hole, counterclockwise or clockwise. It's like a nut and a bolt. Turn the nut clockwise, it's going to urge the bolt in. Turn it counterclockwise, it's going to urge the bolt out. So that claim language would have absolutely no meaning if this claim were directed to a cartridge alone. It would never exclude. The inwardly language would never exclude any cartridge. The question is, is it a limitation at all? Certainly the case law says every limitation has to be met for infringement, and there are no superfluous limitations. But that doesn't tell us whether a certain phrase constitutes a limitation or not. I'm suggesting to you that the phrases on which I assume you're depending don't constitute limitations. If that's correct, then all the case law you're talking about is totally irrelevant. If it's incorrect, then the opposite conclusion has to be drawn. Your Honor, even Canon concedes explicitly in its brief and conceded to the district court that all of the description in the preamble and the body that pertains to the main assembly of the printer is limited. They concede that. They agree with us on that. What they disagree with us on is in what way it's limited. And what they say is it's a mere environment or reference point, which is... Your Honor, environments are not limited. They're not plain limitations. Well, Your Honor, in addition to the plain language of this claim and the fact that, in my view, under the Bicon analysis, which says when you have a claim that describes the interoperation of two things and part of the language of the claim that describes that interoperation would not limit the one. It has to encompass the combination. I think that's the clear hole in the Bicon. There's another way of looking at this, Your Honor. A couple more ways of looking at it. Let me start with this one. If you pick up the GCCI cartridge and you hold this claim in one hand and the GCCI cartridge in the other hand, Your Honor, you cannot tell whether the cartridge infringes this claim by looking at the cartridge. If this claim covers supposedly the cartridge, you ought to be able to tell from looking at the cartridge in the claim whether it infringes it. But you can't. You can hold the cartridge in your hand and look at it and ask yourself, well, will this be drawn inwardly or outwardly? The only way you can answer that question is to know something about the printer that's not even in the claim. You have to know something about a printer that exists out there in the world somewhere. If that's the case, how can the cartridge possibly be the only thing that this claim is drawn to? The public would not know how to interpret this claim and would not know how to determine infringement. So that's one way, I think, an important way of looking at this issue. I'd like to shift you for a moment to the other issue here, which is more of an obviousness, but there's a serious question of obviousness. I looked at the record and there seemed to be two competing experts. One said the claim is obvious, particularly looking at the impact of coping. They said no. And the question is, does this raise a serious question of obviousness? This seems to me to boil down to the question of what's meant by the term process cartridge in the claim, whether a process cartridge implies that the user can easily replace it or whether that's not part of the definition of process cartridge. What's your position as to whether a process cartridge has an easily replaceable element as part of the definition? Well, a process cartridge, of course, is a replaceable element of the printer. The issue that Your Honor is describing is that the expert for Canon said, well, one of skill and the art would not have been motivated to combine. It's a question of whether a service technician has to do it or whether the user can do it. Correct. So is the definition of process cartridge, does that assume the ability of the user? Because if it does include the ability of the user to do it, your expert doesn't address that. It doesn't seem to have raised a serious question of validity. Well, it was through the lens of whether a service technician would be needed to change this thing that Canon's expert said one of skill and the art would not be motivated to go from a gear type coupling to My question is one of claim construction. Does the term process cartridge used on this claim imply that it can be replaced easily by the user or would it include also the cartridge which has to be replaced by a service technician? As a matter of claim construction, Your Honor, I don't think you can make that distinction. I think that distinction comes into the analysis of motivation to combine. But I would not say that as a matter of claim construction, you can read the word process cartridge in the claim and say that that implies something very specific about how easy or how difficult it is to change this thing in the machine. But you put in no expert testimony about the need for the term process cartridge within the industry, right? That's right, but Canon's expert also didn't apply it in that specific. I'm not so sure about that. If I could just address this point a little bit further about whether it's easier or not to employ the screw technology of Canon's prior art Japanese application versus the gears that was clearly in the prior art. The problem, and we pointed this out, I hope clearly in our reply, Your Honor, the problem with that analysis that Canon's expert opined on and that was adopted by the district court is that the reference itself, the prior art reference itself, says that there are advantages to using the screw over the gears. Specifically, I don't understand why. Okay. I won't belabor that point. Thank you. Time is expired. Can I just add to that? Yes, I'll throw that in the show. This procedural context in this case is, you know, from a random preliminary conjunction. We're talking about claim construction, but we're not at the end of the case. And not even the district court has construed Claim 58 in light of the entirety of all the claims that have to be construed. The district court has made findings that the balance of the hardships favored Canon. We can dispute that, but the judge made those findings. And therefore, isn't it logical or sensible that in a preliminary injunction context, Canon doesn't have to be determined to be right. All that Canon has to be determined to be is to have a reasonably good possibility of being right enough to balance against the balancing of the hardships. Therefore, it's not quite the same thing as saying that to sustain a preliminary injunction, the appellate court has to say, absolutely, this is the way it will come out. But that there's a substantial likelihood it will come out this way. Your Honor, you're referring now to the claim construction issue? The entirety of the issue is likelihood of success, which is only one factor in the four-factor analysis for preliminary injunction. Well, look, I'd be happy to address all of them, but since my time has expired, unless you have questions, let me just focus on the likelihood of success that Your Honor is asking about. Respectfully, I don't think that it would be an efficient use of judicial resources for the court merely to address whether the district court judge's claim construction has a reasonable likelihood of being correct. Now that we're up here on appeal, what would make most sense would be to get a definitive ruling from this court on the claim construction issue now rather than going back. Of course, the district court judge, in the remainder of this proceeding, is going to apply the claim construction that he came to in the preliminary injunction proceeding. Maybe, maybe not. It may well modify it. It frequently happens. He'll have a fuller record. He'll have more time. Maybe new considerations brought to bear. It's possible, Your Honor. All right, thank you. Mr. Cannella.  To persuade this court to overturn Judge Castel's grant of a preliminary injunction gives GCC's burden to demonstrate that the district court abused its discretion and committed a clear error of judgment. Or it committed an error of law, which is what he alleges, namely a grossly inaccurate claim construction in which case abuse of discretion is not the operative standard of review. The correctness, at least in the context of which Judge Garbus reminds us, of a preliminary injunction is the issue. And so it's a de novo review. I absolutely agree, Your Honor, it is a de novo review. And on claim construction, I invite the court to make that de novo review. I invite the court to examine the evidence which Judge Castel examined to see if the court reaches the same conclusion, because I am confident the court will reach the same conclusion. This claim, Claim 58, is directed purely and simply to a process of cartridge. It cannot be contorted or distorted by commercial motivation or litigation-inspired argument into a claim to a combination of the cartridge and the printer. Chief Judge Michel, I also agree entirely that the outcome of claim construction in this case is not predetermined by the decisions of this court in other claim construction cases, Bicon, Stencil, or anything else. But Judge Castel did not apply Stencil to predetermine the outcome in this case. He said Stencil is illustrative and illuminating and instructive, I believe is the exact word, because Stencil demonstrated that you can in fact claim a component within its environment without that claim becoming converted into a claim to the combination of the component and its environment. The law precedes Stencil, succeeds Stencil, not in doubt. It all depends on how you do it. It all depends on the language and how the ordinary artisan would read the language. So the generalizations, in my view, are no more helpful to you than they are to your opponent. Well, Chief Judge Michel, then let's turn to the specifics which Judge Castel turned to in doing his claim construction. I won't belabor them because the court has made observations that make clear that the court knows most of the evidence. Well, not so fast. I'm very troubled by all this language. If it has no meaning, why is it in there? Why is the claim drafter talking about the twisted surface if the twisted surface has nothing to do with the structure of the cartridge?  I'm talking about the portion of the claim body that reiterates about the twisted surface and then about the driving rotatable member and about the hole. I mean, those are all parts of the machine external to the cartridge. So if the claim isn't something more than the cartridge, what is all this language doing in the body of the claim? That language in the body of the claim is just a recitation, again, of the environment within which this cartridge and its projection works. Why would the environment need to be repeated? It's already been stated in the preamble. So when the claim includes extensive clauses and phrases describing certain of the printer machine parts, it looks to me suspiciously like the drafter is trying to tell the reader something new and different than environment. He's already covered the environment. Now in the body of the claim, he's saying something new and different. It looks like to me. Quite to the contrary, Your Honor, I believe the drafter is doing no more than explaining how this projection makes with the environment, the unclaimed environment of the preamble. Certainly Canada can claim its inventions in any fashion that is in accord with the patent law. They could claim it in combination. They could claim the separate components. Instructive on that point is this Court's decision in the Anton Bauer case, which although is a case that deals with implied license. How can we tell whether the projection, that's a structure within the cartridge, is going to be urged inwardly of the whole or not? Well, if we don't know something about the geometry and the dimensions of the whole. I think the inquiry, Your Honor, however... If the projection is too short, nothing is going to happen. If it's too long, it might also not work. And so by referring to being urged inwardly of said whole, maybe the claim drafter is, in effect, defining the dimension of the projection, telling us the distance of the projection, perhaps also the thickness of the projection. Could have described it otherwise. Could have said it's one centimeter long and a tenth of a centimeter wide. But instead of doing that, he did it by reference to the part with which it's going to meet. So that suggests that this is an important part of the definition of the projection, the structure and dimension, shape and length of the projection itself. Why not? I think, Your Honor, what my adversary says, if you take the cartridge and you claim 58, you can't determine if it infringes. But that's not the correct way to go about it. Is he right about that? No, he is not, Your Honor. He's not right about that? No, because you can't... The suggestion is that there's extraneous language here in Claim 58 which doesn't help you to look at the cartridge and determine whether it infringes. It only helps you once you put the cartridge to use in the whole. Is that not true? It is not true, Your Honor. The language in Claim 58 simply provides the environment. The balance of the 018 patent, the specification... That's much. You're not really telling me. Is the language in here that describes how the thing fits into the whole which tells you more than you need to know when you're looking at the cartridge itself? In other words, you can't tell whether the cartridge infringes without looking at, one, the cartridge, and, two, how it's used with the whole. That's right. That is true, Your Honor. But one looks... I don't believe so, Your Honor, because one looks not to Claim 58 by pulling it out of the patent and divorcing it from everything else  One looks at Claim 58 within the context of the patent. Sure, but if there are 59 claims and all 59 are asserted, then I, as the accused infringer, need to be able to separately analyze each one of the 59 claims, including Claim 58, because my liability can be based on that one claim alone. Therefore, I have to be able to tell whether I'm infringing or not. I deserve to be put on fair notice as to each and every claim because it's a separate basis of liability. And if Judge Steink is correct that you can't tell whether the particular cartridge infringes or not by just looking at Claim 58, then that suggests to me that there isn't fair notice to competitors. The reason for that, Your Honor, however, comes from this Court's precedent on how to do claim construction. This Court has never said, pull the claim out of the patent and determine what the claim means. Nobody is suggesting that you ignore the other claims or the specifications or the summary that you mentioned or any other part of the patent document. No one has made such a suggestion. The concern is, how does one know, reading 58, the way you would have them read it, whether a particular cartridge infringes or not? Because you construe Claim 58 by looking at the claim language of Claim 58, by looking at the specification of the patent, by looking at the prosecution history. You can, Your Honor, because once you understand what the whole contains, by looking at the specification and the descriptions in the specification... Yes, Your Honor, but which is a fair infringement analysis? Because as this Court has said time and time again, to do the infringement analysis, first you construe the claim. You construe the claim by looking at the claim, the specification, and the prosecution history. Only then, when you have an understanding of the claim within the context of the patent and the specification, does one look through the cartridge. With the knowledge base of what the entire patent provides, one can look at the cartridge and determine that the cartridge meets all of the requirements of Claim 58. It's simply... I believe, Your Honor, it's simply a matter of performing the construction and the infringement analysis in the proper order, not simply pulling out a claim and saying, with just this claim and nothing else, can I determine whether I'm infringed? That is often the case in patents. You can't pull the claim out and determine whether you infringe until you've studied the entire patent, all the claims, the plain language of those claims, the specification, and the prosecution history. So, in essence, I believe that argument is without merit, Your Honor. Are we... We aren't making arguments. You, Mr. Rader, are making arguments. We're just asking questions and trying to learn about the case. Judges don't have positions in cases. We aren't making arguments. We don't have contentions. That's your job as advocates of it. Don't be ascribing to the judge an argument. We aren't making arguments. We're just trying to learn. I appreciate the observation and apologize, Your Honor. Let me ask you a perhaps naive question. Perhaps. We're at the assembly line. The assembly line off has come the cartridge that's the accused device. Somebody picks it up. A patent attorney picks it up at the end of the assembly line. The company says, does it infringe or not? Can he sit there and say, it infringes, or does he say, wait a minute, let me go over until you look back at the printer, and then I'll tell you if it infringes. Can you answer that? Yes. You can look at it and say, this infringes. No, he can't look at it and say, this infringes, but he doesn't have to go look at the Yule Packet printer. He has to do what this court has said he has to do to make an infringement determination. He's got a copy of the patent. I'm sorry, Your Honor, I did not understand from your question that he had the full patent and the specification with him when he was looking at the cartridge. Armed with those devices and the cartridge, those pieces of paper, I should say, and the cartridge, he can make an infringement. Does the patent show the dimensions of the twisted surface and the dimensions of the projection that meets with the inside of the twisted surface? I believe not, Your Honor. Well, then how can you tell if it infringes? If the projection is too short to reach the place where we have to make,  it's not going to work. And it's not going to be solved. Well, that's neither here nor there, whether it's going to be a popular product or not. On the issue of whether you can tell whether a given cartridge infringes or not, the only way you could tell would be if there was some dimension either in the plain language itself or in the rest of the specification. You say there isn't a dimension in the rest of the specification, and we can see ourselves that there are no dimensions in the plain language. Therefore, I don't see how you can tell whether a given cartridge infringes or not until you try to put it into the overall machine. What am I missing? How could you tell other than by putting it in somebody's printer and it either fits or it doesn't fit? Because it doesn't have to work in anyone's printer. in order to infringe this claim. Well, that's the issue in the case. That's circular. No, I believe not, Your Honor. The infringement here is established if they make a cartridge which meets the limitations of Claim 58. Whether that cartridge can subsequently be used in a county printer is not an element of infringement. It's only whether they make a cartridge which meets the limitations of Claim 58. Now, in the facts of this case... ...determine whether the limitations of 58 have been met just by looking at the cartridge. You've got to look at the cartridge and you've got to look at the hall. Right? No, you do not, Your Honor. You have to look at the cartridge and have a look at the rest... at the Claim 58 and the rest of the time. You don't have to look at the hall. Well, if it's... If it's a printer, if it's... Now, to this point, it has to have projections that will be driven inward, so to speak. I assume I can look at the cartridge and I can imagine a twist... a hole... a twisted hole can have any shape in the world. I guess I can imagine a twisted hole that won't drive it inwardly. Does that mean it doesn't infringe? Because this is a cartridge, Your Honor. It will infringe some twisted holes and it won't... it will be driven inwardly with some and it won't be driven inwardly with others without regard to whether it was counted like a licensed cartridge. The body of the patent itself illuminates what the configuration of the twisted hole is. The problem is that there are many claims in this patent, the vast majority of which, I guess you agree, are combination claims, which is not good. You need... So, if I'm looking at the whole patent, you may be forcing this into a combination conclusion. I know I could. First, Judge Garza disagreed that most of the claims are combination claims. Most of the claims are to individual components, either process cartridges or sensitive drums, or the printer apparatus. Your Honor, I assume my mic is on. Thank you very much, Mr. Rader. Thank you very much, Your Honor. I just want to respond to one point that Mr. Cannella made. He said that the drafter in drafting this claim was doing no more than reciting the environment. And when the drafter wrote about the twisted surfaces of the hole and the other parts of the printer, he wasn't intending or making those part of the apparatus that's actually claimed. And here, I think it's instructive just to point the court, certainly we would agree, but to point the court to the prosecution history. In the prosecution history, in arguing the claims over the prior art, the patent attorney, the drafter of the prosecution history, so to speak, used the classic language that patent attorneys use that this court sees time and again to argue that the prior art that had been cited lacked a substantive limitation of the claim not to twist the hole. He said that the prior art, Susaki patent, quote, fails to teach or suggest at least the feature of the twisted hole, unquote. In litigation, Cannon argues that it was just the environment, but during the prosecution history, Cannon argued that the twisted hole that the prior art failed to disclose or suggest that. That is the classic language that patent attorneys use when they are arguing that a substantive limitation of the claim, not a reference point, but a substantive limitation of the claim is absent from the prior art. That argument was made not with regard to Claim 58, Your Honor. There were two claims that stood rejected. The argument was made not only with regard to those two claims, but with regard to an additional claim, a third claim, and then was applied to every independent claim in two ways. First, by virtue of the fact that all of these claims recite the twisted hole and the projection and direction in exactly the same way. So to the extent that the argument applied to the two or three claims that were being argued, it must apply in the same way to all of the claims since the language is the same. And secondly, the patent attorney argued that all of the independent claims were allowable quite, quote, over the cited art for the above reasons. The only cited art that had been discussed was the Suzannian patent in this argument. So there are two independent reasons why this argument applies to every claim in the patent, not only the two claims that stood rejected. All right. Thank you. We'll take the case under advice. Thank you.